# IN THE COURT OF APPEALS OF IOWA

No. 14-0617
Filed December 24, 2014

IN RE THE MARRIAGE OF SUSAN STAUDT
AND DOUGLAS STAUDT

Upon the Petition of
SUSAN STAUDT,
n/k/a SUSAN ABERNATHY,
        Petitioner-Appellee,

And Concerning
DOUGLAS STAUDT,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J.

Dryer, Judge.


        A father appeals the district court order modifying the visitation provision

of the parties' dissolution decree. **AFFIRMED AS MODIFIED.**


        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro,

P.L.C., Cedar Falls, for appellant.

        Karen L. Thalacker of Gallagher, Langlas, Gallagher, P.C., Waverly, for

appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

A father appeals the district court order modifying the visitation provision of the parties' most recent visitation order. We affirm the decision of the district court modifying the visitation provision of the parties' dissolution decree, except that we reinstate the father's visitation with the younger child each Tuesday night from 6:00 p.m. until school starts Wednesday morning. Additionally, the older child may attend any of these Tuesday night visitations, or all of them, but must attend at least one each month. Each party should pay his or her own appellate attorney fees.

## I.    Background Facts & Proceedings

Douglas Staudt and Susan Staudt, now Susan Abernathy, were formerly married. They have two minor children, W.S., born in 1999, and I.S., born in 2003.[1] A dissolution decree was entered for the parties on May 20, 2011, which incorporated the parties' stipulation that Susan would have physical care of the children. They agreed Douglas would have visitation overnight every Tuesday, alternating weekends, alternating holidays, and twenty-one days during the summer.

At the time of the dissolution decree both parties lived in Cedar Falls, Iowa, but they were aware Susan planned to move to the Des Moines area. Susan and the children moved to Adel during the summer of 2012. Shortly thereafter, Douglas was able to transfer to the Des Moines office of his employer, Mediacom, and he moved to Urbandale. On October 31, 2012, the parties'

---

[1] The parties also have an adult child whose interests are is not involved in the present proceedings.

visitation schedule was modified in an order based on their stipulation. Douglas was granted visitation overnight every Tuesday, alternating weekends, alternating holidays, and one-half of summer break from school.

On February 7, 2013, Susan filed a petition for modification of the visitation provision of the parties' dissolution decree due to her plan to move with the children to Waverly. It is approximately a two hour and fifteen minute drive between Waverly and Urbandale. Susan obtained employment as corporate counsel for Cedar Falls Utilities. She and the children moved to Waverly in March and she married Mark Abernathy in May. Douglas continued his Tuesday evening visitation by arranging with his employer to leave work early on Tuesdays, drive up to Waverly, then stay overnight with the children either with their grandmother in Charles City or with friends in Cedar Falls. He then worked each Wednesday at his old office in Cedar Falls before driving home Wednesday evening. For other visitation the parties agreed to meet in Story City.

W.S., who was then fourteen years old, began to express reluctance to visit Douglas in Urbandale. He had obtained a part-time job working at a cattle operation and was also involved in school activities in Waverly, where his friends also resided. Testifying at trial, W.S. asked for visitation to be reduced to one weekend a month, alternating holidays, and thirty days of his choosing during the summer.

Susan proposed that I.S. continue with visitation every Tuesday night, but W.S. have overnight Tuesday visitation only once a month to accommodate his job and school activities. She also proposed that I.S. have visitation on alternating weekends, but W.S. have visitation with Douglas one weekend each

month. Additionally, she proposed Douglas should have forty days with I.S. during the summer and twenty days with W.S. She agreed to alternating holiday visitation, with some minor variations from their current schedule.

Douglas proposed that he have the children on Tuesday night one week, then Thursday night the next week, coordinated with his alternating weekend visitation. He also requested that if the children did not have school on the Friday before or the Monday after his weekend that the children spend that day with him as well as visitation on other days when the children did not have school. He asked for one-half of the summer break from school and agreed to alternating holidays.

A modification hearing was held on November 25, with Susan, Douglas, and W.S. all testifying concerning their visitation proposals. The district court entered an order on February 17, 2014, finding there had been a substantial change in circumstances sufficient to justify modification of the visitation provisions of the parties' dissolution decree. The court eliminated Douglas's Tuesday overnight visitation, stating it "disrupts the children's normal weekday before- and after-school routines and deprives the children of a necessary sense of stability for the sake of allocating time with the children to Douglas during the week." The court determined the parties would continue to alternate weekends and holidays. The parties were granted time with the children in alternating two-week intervals over summer break, with Susan having the children for the last full week before school started. The court ruled Douglas should provide transportation at the beginning of visitation and Susan should provide transportation at the end of visitation, unless the parties agree otherwise.

Douglas filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), stating, "[t]he evidence presented at trial did not indicate the children were suffering due to the midweek visitation with [Douglas] during the school year," and neither party had advocated for terminating the midweek visitation. Susan resisted the motion, stating she "agree[d] with the court regarding the elimination of Tuesday night visitation." The district court denied Douglas's rule 1.904(2) motion. Douglas now appeals.

## II.     Standard of Review

In this equity action our review is de novo. Iowa R. App. P. 6.907. We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). In equity cases, we give weight to the fact findings of the district court, especially on credibility issues, but we are not bound by the court's findings. Iowa R. App. P. 6.904(3)(g).

## III.     Visitation

**A.**     Douglas contends the district court should not have eliminated his visitation with the children on Tuesday nights. He asserts the evidence presented at the modification hearing did not support the district court's findings that there had been a "disruption" of the children's normal weekday routines because of his midweek visitation. He also asserts there was no evidence showing the children had been deprived of a "sense of stability" because of the visitation.

"The parent seeking to modify child visitation provisions of a dissolution decree must establish by a preponderance of evidence that there has been a

material change in circumstances since the decree and that the requested change in visitation is in the best interest of the children." *In re Marriage of Salmon*, 519 N.W.2d 94, 95-96 (Iowa Ct. App. 1994). This is a less demanding burden than when a parent is seeking to change a custodial provision in a dissolution decree. *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009). "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Salmon*, 519 N.W.2d at 96.

A noncustodial parent should have, "liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a) (2013). "Liberal visitation rights are in the best interest of the children." *In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991). A court should fashion a visitation schedule that serves the best interests of the children. *In re Marriage of Gensley*, 777 N.W.2d 705, 718 (Iowa Ct. App. 2009).

In the present case, Susan proposed I.S. continue to have Tuesday night visitation with Douglas. For W.S., she proposed he have, "One Tuesday per month during the school year; day to be chosen by [W.S.] consistent with his work and other school activities." Her testimony at the modification hearing supported her proposal, stating W.S. "would like to make that one Tuesday a month."

There was no evidence in the record showing the children were having problems with the Tuesday night visitation. Nor was there any evidence connecting W.S.'s recent poor grades with the midweek visitation. We also note

W.S.'s complaints about visitation were that he did not like visiting Douglas in Urbandale because his friends and activities were in Waverly. We appreciate the district court's concerns related to the stability of the children going back and forth between their parents' two communities and even the disruption in their daily schedules. But that is often a burdensome consequence the parents and children must bear in many dissolutions of marriages. In this case, however, the parties proposed a workable mid-week schedule both prior to and during the trial, yet the district court deviated from their proposal. We agree with Douglas's contention the court's ruling was not supported by the record, and reducing his visitation time with W.S. would only exacerbate, rather than help his relationship with his son.

We therefore modify the visitation provision of the parties' most recent modification order of October 31, 2012, to reinstate Douglas's visitation with I.S. each Tuesday night from 6:00 p.m. until school starts Wednesday morning. Because Douglas will already be in the area for visitation with I.S. on Tuesdays, W.S. may attend any of these Tuesday night visitations, or all of them, but must attend at least one each month. In accordance with Douglas's agreement, he is responsible for all of the transportation for the Tuesday night visitation.

**B.**　Douglas also asserts the district court should have adopted his proposed visitation schedule in its entirety. He asks that if the children do not have school on a Friday immediately before his weekend visitation or on a Monday immediately after his weekend visitation, he should have visitation on these extra days. He also asked that if his visitation time is otherwise reduced, he should have more time in the summer. As Susan points out, the district court

did not completely adopt her proposed visitation schedule or Douglas's proposed visitation schedule. We note one provision in their original 2011 stipulation has not been modified, namely "to cooperate on a visitation schedule. Both parties understand that they must take into consideration the children's work, school and extracurricular activities."

Aside from the modification we made above, we conclude the visitation schedule as set forth by the district court is equitable and is in the best interest of the children.

## IV. Attorney Fees

Susan requests attorney fees for this appeal. This court has broad discretion in awarding appellate attorney fees. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). An award of appellate attorney fees is based upon the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We conclude each party should pay his or her own appellate attorney fees.

We affirm the decision of the district court modifying the visitation provision of the parties' most recent visitation order, except that we reinstate Douglas's visitation with I.S. each Tuesday night from 6:00 p.m. until school starts Wednesday morning. Additionally, W.S. may attend any of these Tuesday night visitations, or all of them, but must attend at least one each month. Costs of this appeal are assessed one-half to each party.

**AFFIRMED AS MODIFIED.**