## IN THE COURT OF APPEALS OF IOWA

No. 15-0102
Filed February 10, 2016

IN RE THE MARRIAGE OF CRAIG A. LARSON
AND JULIE A. LARSON

Upon the Petition of
**CRAIG A. LARSON,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning**
**JULIE A. LARSON,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Kossuth County, Nancy L.

Whittenburg, Judge.


        A former husband and wife contest the property distribution in the decree

dissolving their marriage. **AFFIRMED AS MODIFIED.**


        David Shinkle of Shinkle & Lynch, Des Moines, for appellant.

        Kodi A. Brotherson of Becker & Brotherson Law Offices, Sac City, and

Conrad F. Meis of Buchanan, Bibler, Gabor & Meis, Algona, for appellee.


        Heard by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

Craig Larson challenges the property distribution in the decree dissolving his four-year marriage to Julie Larson. Craig asks us to reduce his $178,021 equalization payment to the extent the district court tied the payment to his future interest in inherited farmland. He also seeks credit for his $5000 payment of temporary spousal support. On cross-appeal, Julie asks for appellate attorney fees, and in the event we reduce Craig's equalization payment, she asks for reinstatement of the $10,000 award of trial attorney fees in the original decree.

Because we are persuaded by Craig's first argument, we modify his equalization payment to $78,021. Given the parties' circumstances at the time of the lump sum $5000 payment, we decline to credit Craig for the temporary support. We reinstate the $10,000 in trial attorney fees originally awarded to Julie by the district court. We decline to award appellate attorney fees.

## I.    Background Facts and Proceedings

Craig and Julie started dating in 2004. They moved in together, and she began helping with his custom farming operation in 2005. They married in August 2009. The union was Craig's third marriage and Julie's fourth marriage. Craig and Julie do not have children in common, but both have children from previous relationships. Craig filed a petition to dissolve the marriage in May 2013.

At the time of the trial, Craig was fifty-three years old and in good health. He has worked for the City of Wesley doing maintenance since 1980, but also has carried on a farming operation. Craig farmed with his father from 1987 until

his father's retirement in 1996. By the time he met Julie, he had been farming for about eighteen years. For that entire time, he had been renting land from H & W Farms, which was owned by Lucille Hirner and her sister Anna Mae Walker.

Julie was forty-four years old. She described herself as "pretty healthy"—though she has fibrocystic disease and nerve damage in her left leg from cancer surgery. Julie came into the marriage with relatively few assets and some debt, including delinquent student loans, as well as "medical and lawyer bills," according to Craig's testimony. Craig testified he helped pay down some of her debts before and during the marriage.

Before the marriage, Julie worked full-time as a bookkeeper at Algona Marine. She quit that job and moved to a part-time housekeeping position at the Hancock County Memorial Hospital in Britt. Julie's reduced hours allowed her to increase her contribution to the farming operation. Along with her bookkeeping duties for the farm, she did chores such as spraying, mowing, and maintaining machinery. Julie testified she was responsible for half the farm work during the marriage. After she and Craig separated in May 2013, Julie worked two part-time jobs and took courses to become a registered nurse.

The district court held the dissolution trial over three days in February, June, and July of 2014. In its November 7, 2014 ruling, the court assumed the parties had agreed that Craig possessed a "vested remainder interest" in Kossuth County farmland—valued at $745,158—devised to him by his long-time

landlady Lucille Hirner.[1]  After dividing the parties' assets and liabilities, the court ordered Craig to pay Julie the sum of $31,578.00 "strictly to equalize the division of marital property between them."  The court then ordered Craig to pay Julie

> an additional sum of $100,000 to compensate her for the improvement to and retention of his premarital assets, including his machinery and farm operations, and for her contribution to the maintenance of his relationship with his landlords, Lucille Hirner and Anna Mae Walker, that engendered their good will and generosity in favor of Craig as evidenced by the provisions made for him in Lucille's will.

In addition to the equalization payments, the court ordered Craig to pay $10,000 of Julie's trial attorney fees.

Both parties filed motions under Iowa Rule of Civil Procedure 1.904(2). Craig contested the court's finding that he agreed he had a vested remainder interest in the farmland worth $745,158.  He disputed the existence of such an asset, contending the evidence showed he was a "remainder beneficiary" in Hirner's will and may or may not inherit the property.  He noted Hirner's sister, Anna Mae, is both the beneficiary of the trust and its sole trustee, and as such, she "has the absolute right to sell the trust's property (farmland) and use the proceeds from the same in any way she chooses."  He also disputed the value of the farmland assigned by Julie's exhibit, and whether it would be subject to division under Iowa Code section 598.21 (2013).  Craig's motion also contested the court's lump sum distribution of $5000 to Julie in a November 15, 2013 order

---

[1] Lucille died in 2011.  In her will, Lucille created a trust to pay income to her sister Anna Mae Walker during her lifetime and upon Anna Mae's death, the trustee or executor was to distribute Lucille's 183.18 acres of real property to Craig.

for temporary support. He asked the court to reduce Julie's award by that amount.

Julie responded that the evidence supported the court's finding that Craig's remainder interest in the real property vested upon Lucille's death. She argued: "Craig's hypothetical that this 86-year-old woman might sell farmland from the trust to support herself is improbable, even if allowed by the trust, and even if her health were to deteriorate." Julie also asserted the court could take judicial notice and was "presumably well aware of the significant value of Kossuth County farm land, which generally sold in the range of $10,000 to $11,000 per acre throughout the period this case was tried." Julie also asked for recalculation of the equalization payment because a $42,609 debt the court allocated to Craig had already been paid.

In its December 23, 2014, ruling, the district court acknowledged its error in finding Craig agreed to holding a present interest in the farmland worth $745,158. But even without Craig's agreement, the court decided: "There are no conditions on Craig's remainder interest; no ifs, ands or buts, therefore, it is properly characterized as a vested remainder interest." The court further found Julie had established the value of the property by making an offer of proof at trial. The court also accepted Julie's argument concerning the debt recalculation, increasing Craig's property equalization payment owed Julie to $178,022. Because of that increase, the court eliminated the $10,000 award of attorney fees to Julie. Craig appeals, and Julie cross-appeals.

## II. Scope and Standards of Review

We review dissolution proceedings de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We examine the entire record and adjudicate anew the issues underlying the property distribution. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We give weight to the factual determinations made by the district court, but they are not binding on us. *Gust*, 858 N.W.2d at 406.

We apply an abuse-of-discretion standard when reviewing the district court's consideration of evidence in support of post-trial motions. *See In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We also review the district court's decision on attorney fees for abuse of discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013).

## III. Analysis

The pivotal issue on appeal is whether the district court properly considered Craig's expected inheritance under Hirner's will when determining the equalization payment he owed to Julie under the dissolution decree. Related to that issue is the district court's handling of Julie's trial exhibit that propounded the value of that inheritance. We also address Craig's request for a $5000 credit for temporary spousal support and Julie's request for attorney fees.

### A. Future Interest and Trial Exhibit

Craig rented farmland owned by Lucille Hirner for nearly two decades. Although Craig was not expecting to inherit the land, Hirner named Craig as a beneficiary in her will, which was executed in 2011. The will created the Lucille

Hirner Trust following her death. The trust endured for the lifetime of her sister, Anna Mae Walker, with Anna Mae as both the trust's sole beneficiary and trustee. The trust's assets included the land farmed by Craig. The will expressed the following instruction:

> Upon the death of my sister, Anna Mae Walker, or if Anna Mae Walker predeceases me then on the distribution from my estate, I direct my Trustee or my Executor as the case shall be, shall:
>
> a. Distribute to Craig Larson, free and clear of the Trust, any interest that the Trust holds in the Northeast Quarter (NE1/4) of Section Four (4), Township Ninety-five (95) North, Range Twenty-seven, West of the 5th P.M., Kossuth County, Iowa. The balance of the assets comprising the LUCILLE B. HIRNER TRUST shall be reduced to cash and distributed as follows: . . . .
>
> No beneficiary shall have the power to sell, assign, transfer, encumber, or in any manner anticipate or dispose of any interest in either income or principal, created by this Item. The right to income and principal created by this Item shall not be liable to be reached, in any manner, by the creditors or judgment holders against, any individual who has received a beneficiary interest under this Item; or subject to any claim for alimony, support, maintenance, or property distribution.

Hirner died in 2011, but Walker was still living at the time of the dissolution trial. As instructed by the will, the farmland remained in trust and was not yet distributed to Craig.

The stipulation of assets and liabilities prepared by the parties listed "Vested remainder interest in NE1/4 4-95-27, Kossuth County, IA (Tract 1)" at an "Agreed Value" of $745,158. But the listing was marked with an asterisk indicating Craig "disputes the existence of this asset."

At trial, the parties debated the certainty of the inheritance, as well as the value of this farmland—183.18 acres—as it related to the division of marital property. Julie's trial counsel offered the following exhibit:

CRAIG'S VESTED REMAINDER INTEREST IN FARMLAND PURSUANT TO IOWA INHERITANCE TAX TABLES
Remainder Interest In 1/2 INT. NE 1/4 4-95-27, Kossuth County, Iowa (See Exhibit 167 re Craig's remainder interest In Lucille E. Hirner Trust)
183.18 acres x 50% interest

| | |
|---|---|
| Age of Life Tenant, Anna May Walker | 86 |
| Remainder Interest Factor Pursuant to Table | 0.81358 |

183.18 x $10,000/acre x 50% int. =   [$]915,900.00
$915,900 x .81358
PRESENT VALUE OF VESTED REMAINDER INTEREST [$]745,157.93

In a professional statement, Julie's counsel told the court his office prepared the exhibit by calculating Craig's remainder interest under the trust created in Hirner's will using the Iowa Department of Revenue Mortality Tables for life estates and remainders in the back of the Iowa Code. Craig's counsel objected, arguing a lack of foundation for the exhibit and contending it represented "argument on the part of counsel." In Craig's view: "There [was] no basis for the Court to determine that he, in fact, has anything of value as a result of the will of Lucille Hirner."

The court sustained Craig's objection on foundation grounds. Julie's counsel argued Craig had "the ability to do far more [farming] as a result of his inheritance" from Hirner.

The court continued to sustain Craig's objection and declined to admit Julie's exhibit into evidence, reasoning:

> There is no proof in the record that this Court could rely upon to make a factual finding that it was this witness's efforts that led to the devise in the will of Lucille Hirner. That would be speculation on this Court's part, to make such a fact finding . . . we're getting pretty far afield from the relevance of this . . . possible inheritance, the possible value of it and what it means to determining the issues in this case.

In light of the court's ruling, Julie's counsel made the following offer of proof to preserve the record:

> If allowed to continue in this line of testimony, I would be able to establish that, first of all, Craig inherited a parcel of farm ground which is specifically identified in Exhibit 167 and also specifically identified in Exhibit 168, in the court officer deed located therein. I could establish that this witness followed the instructions that her husband gave her to take care of the decedent and her sister, who leased ground to the parties; that they did not increase the rent as much as she would have expected other landlords to have done under comparable circumstances but for the relationship she established with those sisters, again, at Craig's request.

Julie's counsel further argued that regardless of whether Julie's favors for the sisters had "any impact" on Hirner's generosity toward Craig, Craig already had a vested remainder interest in fifty percent of 183 acres of farm ground—valued at $745,157.93

> by which reason his need for retirement savings is dramatically reduced, if not eliminated, such that he doesn't really have any need for his IPERS plan anymore and is better able to use that resource to fund a cash equalization payment in the dissolution, if he should find or argue that a cash payment outright would be unfeasible in the course of sustaining his ongoing farm operation.

Craig's counsel responded that his client had "no vested right" in the property because Walker, as trustee, had the right to sell the farm for the benefit of the trust. And as the beneficiary of the trust, Walker had the right to that money. Counsel further argued Craig "may die before Anna Mae Walker, in which case he would have nothing." Craig's counsel asserted his client had "no property worth any value at this stage. But even if the Court considered him to have an inheritance, inherited property is not considered in a dissolution of marriage."

In the decree, the district court addressed Julie's request to consider the "vested remainder interest" held by Craig under Hirner's will. The court noted: "The parties have listed this interest under line 1 of Form B and agreed by their signatures on the form that the value of this interest is $745,158.00." (The court overlooked the asterisk on the stipulation.) The court further stated: "Julie believes that she helped to foster the relationship that Craig had with Lucille that resulted in the creation of this interest under Lucille's will and this should be considered in the division of property. Craig's interest may be divided or considered in the division of property to avoid injustice."

The court found Julie followed Craig's directive to "cultivate a good relationship" with the sisters by driving them to doctor's appointments and the grocery store, helping them with household tasks, mowing their lawn, and shoveling snow from their sidewalks. The court also acknowledged Craig performed many of these same tasks and had a cordial relationship with the sisters predating his marriage to Julie. Ultimately, the court decided it would be "unfair for Julie to not be compensated for the contributions she made to Craig's receipt of the interest under Ms. Hirner's will." Accordingly, the court included this vested remainder interest, valued at $745,158, in Craig's list of assets, and ordered him to make an equalization payment of $100,000 to Julie related, in part, to "her contributions to the maintenance" of his relationship with his landladies that resulted in the bequest in Hirner's will.

In response to post-trial filings by the parties, the court enlarged and modified the decree. The court acknowledged incorrectly believing Craig had

stipulated to the existence and value of the inherited asset. But the court did not retreat from its decision that Craig received a "vested remainder interest" in the farmland under Hirner's will. The court reversed its trial ruling excluding the exhibit created by Julie's attorney and received the exhibit as evidence of the "fair value of the vested remainder interest" held by Craig in the farmland. The court found based on Julie's offer of proof and the authority in *In re Marriage of Rhinehart*, 704 N.W.2d 677, 683-84 (2005) (*Rhinehart I*) that Craig's future interest should be considered when determining an equitable division of the marital property.

On appeal, Craig claims the district court erred in ordering the $100,000 equalization payment based on his future interest in the farmland. Craig argues the finding he had a vested interest in the property was incorrect. He contends the devise to him was secondary to the trust Hirner created to meet her sister's needs. Walker was the sole beneficiary of the trust, as well as the trustee, having authority to sell the land if necessary and appropriate.[2] Craig points out: "The will specifically indicated that the distribution to Craig is 'any interest that the

---

[2] The will states:
> I grant to my Trustee, without the necessity of notice to or approval of any Court or interested person, the following rights and duties . . . To sell at public or private sales, lease or grant casements for a term within or extending beyond the terms of the trust, repair, improve, remodel, demolish; or abandon, any real or personal property of the trust. To borrow money from any lending agency, and to secure any such loan by a pledge or mortgage of any of the assets of the trust deemed necessary by my Trustee.

Trust holds' in the property upon the death of Ms. Walker. That there will be an interest left for Craig at the time of Ms. Walker's death is speculative."

Under chapter 598, inherited property ordinarily is not divisible. The court "shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties" after considering a host of factors.[3] *See* Iowa Code § 598.21(5). Property inherited by either party during the course of the marriage is the property of that party and is not subject to a property division under section 598.21 unless the court finds that refusal to divide the property is inequitable to the other party. *See* Iowa Code § 598.21(6); *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

In the decree, the court analyzed the factors listed in subsection (5). Out of the gate, the court recognized the Larsons' marriage was short, lasting less than four years. Iowa Code § 598.21(5)(a). The court next found Craig brought "significant assets" to the marriage, including land, machinery, and an established farming operation, while Julie's personal property contributions were "much less significant." *See id.* § 598.21(5)(b). As for the contribution of each

---

[3] The statutory factors pertinent to this case include: (1) length of the marriage; (2) property brought to the marriage by each party; (3) contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking; (4) the age and physical and emotional health of the parties; (5) contribution by one party to the increased earning power of the other; (6) earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage; (7) amount and duration of an order granting support payments and whether the property division should be in lieu of such payments; (8) other economic circumstances of each party; (9) tax consequences to each party; and (10) any other factors the court may determine to be relevant in an individual case. *See* Iowa Code § 598.21(5).

party to the marriage, the court found "Craig brought the earnings from his outside employment with the City of Wesley, the revenue from his farming operation and the premarital assets of the farming operation while Julie contributed her earnings from various outside employers and her labor and knowledge to the continuation of the farm operation." *See id.* § 598.21(5)(c). The court noted both parties were in good physical and emotional health. *See id.* § 598.21(5)(d).

The court found that while Craig's city job and agricultural operation both pre-dated the marriage, Julie's skills and labor had contributed to the success of the farming endeavor, increasing his earning power. *See id.* § 598.21(5)(e). As for the earning capacity of each party, the court offered the following observations:

> Julie's standard of living was elevated by her marriage to Craig; Craig will continue to maintain the earnings he has enjoyed for many years from his work for the City of Wesley but his future farm earnings will depend on his ability to maintain machinery and meet his financial obligations post-divorce while Julie will experience a loss of the farm revenue that will either need to be replaced through education to attain a higher earning capacity or a property division that enables her to maintain a reasonable approximation of her standard of living.

*See id.* § 598.21(5)(f). The court also considered the possibility of support payments, other economic circumstances of the parties, and possible tax consequences. *See id.* § 598.21(5)(h), (i), (j).

In discussing other economic circumstances of the parties, the district court did not specifically address the statutory language concerning future interests. *See* Iowa Code § 598.21(5)(i) ("Future interests may be considered,

but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered."). The legislature added this language in 2007 in an apparent response to *Rhinehart I. See* 2007 Iowa Acts ch. 163, § 2; *see also In re Marriage of Rhinehart*, No. 12-0287, 2013 WL 530838, at *1 (Iowa Ct. App. Feb. 13, 2013).

At the time of the dissolution trial, Craig had a remainder or "future interest" in the farmland devised to him in Hirner's will. The phrase "future interest" denotes "an interest in property in which the privilege of possession or of enjoyment is future and not present." *See* Bryan A. Garner, Garner's Dictionary of Legal Usage 384 (3d ed. 2011). But Craig contends his remainder interest was not vested because of the power placed in the hands of Anna Mae Walker under the terms of the trust. Walker, as trustee, had authority to sell real property held in the trust as deemed necessary during her lifetime. Although Hirner's will did not allow the trustee to remove Craig as a beneficiary, Craig argues Walker's ability to sell the farmland was "tantamount" to removing him as a beneficiary, and therefore, the court erred in considering his future interest as an asset to be divided under section 598.21(5)(i).

We do not believe it is necessary to resolve whether Craig's future interest in Hirner's property was vested or whether it falls within the exception language in section 598.21(5)(i).

In this case it is clear Hirner's devise was solely to Craig. To determine whether equity requires his inherited property to nevertheless be divided, the court must consider the circumstances surrounding the inheritance. *In re Marriage of Liebich*, 547 N.W.2d 844, 850 (Iowa Ct. App. 1996); *see* Iowa Code § 589.21(6) ("Property inherited . . . during the course of the marriage . . . is not subject to property division . . . except upon a finding that refusal to divide the property is inequitable to the other party."). The factors at play under section 598.21(6) include (1) contributions of the parties toward the property, its care, preservation, or improvement; (2) the existence of any independent close relationship between Hirner and Julie; (3) separate contributions by the parties to their economic welfare; (4) any special needs of either party; and (5) any other matter which would render it unfair to Julie to have the property set aside for the exclusive enjoyment of the recipient, Craig. *See id.* Other matters may also impact the decision to include inherited property in the marital estate, including the length of the marriage or the length of time Craig held the property after it was devised. *Id.*

After examining these factors, we conclude Craig's remainder interest in Hirner's farmland was improperly considered part of the marital estate and should not have been subject to equitable division.[4] We disagree with the district court's assessment that Julie's outreach to the elderly sisters—driving them to appointments and helping them with yard work—played a significant role in

---

[4] In ruling on the parties' motions to reconsider, the court affirmed that it considered "this asset in the marital property distribution and now denies Craig's request to reject inclusion and consideration of this asset in the division of the parties' marital property."

securing the inheritance for Craig. Craig performed the same tasks for the sisters and his relationship with them existed long before his short marriage to Julie. Julie testified Craig encouraged her to assist Hirner and Walker with the goal of keeping the rent low. She did not testify he had any future expectation in the property until he received a copy of Hirner's will by mail. As the district court originally opined at trial, "There is no proof in the record that this court could rely upon to make a factual finding that it was [Julie's] efforts that led to the devise in the will of Lucille Hirner. That would be speculation on this court's part, to make such a fact finding."

Further, we find no evidence of a close relationship between Hirner and Julie. Hirner bequeathed the interest to Craig alone and not jointly to Julie, despite knowing the couple had been farming together for six years and were married for two years when Hirner executed the will. In addition, the will stated any beneficiary interest under the trust distribution was not "subject to any claim for alimony, support, maintenance or property distribution."

While the record shows Julie's hard work contributed to the overall farming operation and the parties' economic welfare during the marriage, we disagree with the district court's finding that her actions helped Craig retain his premarital assets to the extent that his equalization payment should be increased by $100,000. We do not believe equity requires a division of Craig's inheritance. Julie does not profess to have any special needs. The marriage was of short duration, and Craig has had no opportunity to enjoy his remainder interest in the farmland. His association with the landowners long pre-dated his relationship

with Julie. Accordingly, we reduce Craig's equalization payment to Julie by $100,000—modifying the decree to award Julie the amount of $78,021.

Because we find Julie's contributions did not warrant an additional $100,000 equalization payment, we do not need to decide whether the district court abused its discretion in its handling of the exhibit created by Julie's counsel regarding the value of the future interest.

## B. Temporary Support

On August 27, 2013, the district court ordered Craig to pay $225 a month in temporary spousal support. In November 2013, the court granted a motion to continue and ordered Craig to advance Julie a lump sum temporary support payment of $5000 for unexpected expenses and to pay down credit card debt. The court anticipated the parties could ask it to consider "this lump sum distribution of $5000 for the temporary support of the respondent in its decision concerning alimony and/or property distribution."

The original decree did not address this support payment. But the court did rule on Craig's request for a credit in this amount in its ruling addressing his rule 1.904(2) motion. The court decided Craig was not entitled to a credit:

> [A]ccording to [Julie's] court filing of October 16, 2013, filed in response to Craig's October 9, 2013 motion to continue trial, she was "living on a shoestring budget with no room for error or unexpected expenses." Any continuance of the November 2013 trial date meant that Julie would need to live for a longer period of time on temporary support than was originally expected. Given the evidence at trial of the substantial monies generated in the farm account to which Craig had complete access during these proceedings and the modest sources of income available to Julie, the fact that the first trial date was continued to accommodate Craig who controlled the joint assets during the pendency of this dissolution [no credit is granted].

Craig takes umbrage with the court's finding that the continuance was "to accommodate" him. He argues a continuance was necessary because of Julie's delay in discovery. Julie counters that Craig was rightly responsible for temporary support because of the discrepancy in their monthly incomes and his control over the farm assets. She argues he used the parties' joint assets to pay the support, and she, in turn, applied the support payment to credit card debt that would have otherwise been included in the property division.

We believe the district court achieved equity by declining to award Craig credit for the temporary support and affirm the court's ruling on that point.

### C.     Attorney Fees

Given our decision to reduce the equalization payment, we turn to Julie's request that we reinstate the district court's award of $10,000 in trial attorney fees. She also seeks an award of appellate attorney fees.

"Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Because of the significant decrease in the equalization payment on appeal, we find it equitable to reinstate the district court's award of $10,000 in trial attorney fees to Julie.

We have broad discretion in awarding appellate attorney fees. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the parties' positions on appeal. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Because on the key appellate issue we

found Craig's position more persuasive, we deny Julie's request for appellate attorney fees.  Costs are divided equally between the parties.

**AFFIRMED AS MODIFIED.**