**IN THE COURT OF APPEALS OF IOWA**

No. 15-1916
Filed October 26, 2016

**IN RE THE MARRIAGE OF JANET MCMILLAN
AND GARY JONES**

**Upon the Petition of
JANET MCMILLAN,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning
GARY JONES,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Allamakee County, John J.

Bauercamper, Judge.


        Gary Jones appeals, and Janet McMillan cross-appeals, the economic

provisions of the decree dissolving their marriage.  **AFFIRMED.**


        Erik W. Fern of Putnam, Fern & Thompson Law Office, P.L.L.C., Decorah,

for appellant.

        Christopher F. O'Donohoe of Elwood, O'Donohoe, Braun & White, L.L.P.,

New Hampton, for appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Gary Jones appeals the economic provisions of the decree dissolving his marriage to Janet McMillan, who cross-appeals. Gary claims the district court should have awarded him a portion Janet's premarital inheritance. Janet contends the court should not have ordered her to pay Gary $50,000 for his contributions to their ten-year marriage. Reviewing the record de novo, but giving weight to the district court's credibility determinations, we find the decree achieved equity between the parties.

## I.  Facts and Prior Proceedings

Janet inherited substantial assets when her husband Daniel McMillan died in 2000. Gary and Janet married in March 2005. They had no children together, but Janet's daughter, who is now married, lived with the parties for about sixty days during their marriage. Gary contributed to the daughter's living expenses. Janet's inherited assets, for the most part, remained in separate bank accounts after the marriage. Generally, the parties did not use her inherited funds to enhance or maintain their standard of living. At the time of the dissolution, the value of her inheritance—including the bank accounts and two houses[1]—was more than $700,000.

At the time of the August 2015 dissolution trial, Gary was fifty-three years old, employed by an agri-business company, and planned to continue this employment. He provided health insurance for the family through his employer. Gary's gross income increased during the marriage from $25,500 in 2005 to

---

[1] One house was the parties' homestead, valued at $108,600, and the second property, including a six-car garage, was valued at $112,300.

$40,400 in 2013. Janet was sixty years old and had a high school education. She had worked as a bookkeeper in Daniel's business but was not employed prior to or during her marriage to Gary. Janet's taxable, unearned income remained between $14,400 and $19,200 during the marriage.[2]

The district court issued a decree dissolving their marriage in November 2015. The court divided the marital assets and debts. The parties had agreed to the valuation of many assets. During the course of the marriage, Janet deposited around $100,000 into the parties' joint accounts. When the parties separated, Janet withdrew $20,700 of the remainder and left one-half for Gary, who withdrew $19,700. Janet then withdrew the final $1000 and closed the account. At trial, Gary still had $19,700, while Janet had spent most of her withdrawal on post-separation living expenses. The court awarded Janet's remaining funds to her and the $19,700 to Gary. Thus, Gary received a portion of the funds Janet deposited into the joint account. Janet had also borrowed $10,000, and the court assigned this debt to her. Gary left the marriage debt free.

The court concluded Janet's inheritance was not a marital asset and found "no basis for invoking [the] exception." Thus, the district court did not include her inheritance in its property division. Ultimately, the court found Gary's contributions "through his improvements to [Janet's] home, provision of family

---

[2] Janet's receipt of $48,000 in unearned income in 2005 appears to be an aberration from the general income stream generated by her inheritance. The other high-income year occurred in 2008 at $19,200, followed by unearned income from 2009 to 2013 as follows: $14,400; 16,500; $15,600; $16,200; and $16,800.

health insurance, and payment of joint living expenses require some compensation." The court ordered Janet to pay Gary $50,000.

Gary appeals and Janet cross-appeals.

## II. Standard of Review

We review the district court's decision de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). We examine the entire record and decide anew the legal and factual issues properly presented. *See In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). But "we recognize that the district court was able to listen to and observe the parties and witnesses." *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009). Consequently, we give weight to the district court's findings of fact, especially when considering the credibility of witnesses, but we are not bound by them. *See In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We will disturb the district court's ruling only when there has been a failure to do equity. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

## III. Analysis

### A. Gary's Appeal

Gary seeks twenty-five percent of Janet's inherited assets or, minimally, $219,000—asserting because Janet "lived off of Gary" during the marriage, it is inequitable to exclude all of her inherited property from the marital estate.

Marriage partners are entitled to an "equitable share of the property accumulated through their joint efforts." *In re Marriage of Liebich*, 547 N.W.2d 844, 849 (Iowa Ct. App. 1996). Iowa courts "divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as

separate property." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). Our statutes exclude inherited property from the distribution of property. *See* Iowa Code § 598.21(5) (2015). Thus, dissolution courts generally award inherited property to the recipient spouse, "independent from the equitable distribution process." *Schriner*, 695 N.W.2d at 496.

But our analysis does not end there. The exclusion of Janet's inherited property under section 598.21(5) "is not absolute. Iowa has a hybrid system that permits the court to divide inherited . . . property if equity demands in light of the circumstances of a spouse . . . ." *See id.*; *see also* Iowa Code § 598.21(6). We consider the following factors in deciding whether it would be inequitable to exclude Janet's inherited assets from division:

> (1) contributions of the parties toward the property, its care, preservation, or improvement[ ];
> (2) the existence of any independent close relationship between [Daniel] . . . and [Gary];
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter[,] which would render it plainly unfair to [Gary] . . . to have the property set aside for the exclusive enjoyment of [Janet].

*See McDermott*, 827 N.W.2d at 679 (citation omitted).

As to the first factor, from the time she received the inheritance until the time of trial, Janet kept most of her inherited money in accounts bearing only her name. Janet had more experience in financial management than Gary, and Janet's investment of her inheritance did not bear any characteristics of a "family decision." Before the marriage, Janet purchased two houses. Both debt-free houses remained titled in her name, and one became the parties' marital home.

Gary paid for and completed physical improvements to both properties and also paid the taxes, utilities, and insurance. But Gary also benefitted by living in one house (mortgage free) and by storing his brother's extra car and his own tools in the sizable garage on the other property. Further, Gary moving into Janet's home when the parties married allowed him to sell his own home, pay off all of his accumulated debts—both mortgage and credit card—and still bring $5000 from the home sale into the marriage. We conclude the first factor does not support making Janet's inherited property an exception to the general rule.

Similarly, the second factor does not aid Gary in his quest to include Janet's inherited property in the marital estate. No independent relationship existed between the two husbands.

Gary emphasizes the third factor, claiming Janet not working and his providing for both parties by his employment preserved the inherited property to Janet's sole benefit because Janet did not have to spend down her inheritance for living expenses. But Janet was not working at the time the parties married,[3] and by their own choosing, the parties did not depend upon her inherited assets for their standard of living during their ten-year marriage. *See In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995) (stating "in situations in which the inherited property does not change in form following its receipt," the court should set it aside as nonmarital).

Further, while Gary's employment was the marital financial base, Janet independently contributed to the marriage by cooking, shopping, housekeeping,

---

[3] Janet testified her last job was in 2002 when she was an unpaid bookkeeper for Daniel's business.

doing the laundry, preparing the parties' income tax returns, and paying the marital bills and taxes. Importantly, "marriage does not come with a ledger*." In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007). "Each person's total contributions to the marriage cannot be reduced to a dollar amount. Many contributions are incapable of calculation, such as love, support, and companionship." *Id.* at 104. Accordingly, we do not emphasize "financial matters" over "other contributions made to a marriage in determining an equitable distribution." *Id.* After considering all of the circumstances, we do not find the third factor overcomes the general exclusion of Janet's inherited property.

The fourth factor likewise does not support Gary's argument. Janet is older, has some health problems, and has not been gainfully employed for many years. Janet's social security will pay her only $423 per month, or $5076 each year, and she will need to rely on her inherited assets to fund reasonable living expenses.[4] Meanwhile, Gary is younger, in good health, and will be able to continue his current employment for more than a decade, which will allow him to make additional contributions to his retirement accounts. Gary also leaves the marriage with more than $105,000 in retirement savings, some of which is due to Janet's "nagging" him to save for retirement.

Finally, as the fifth factor does not support Gary's cause, we decline to modify the district court's ruling regarding Janet's inheritance.

---

[4] Gary calculates Janet will need, at a minimum, $21,400 per year to be financially self-sufficient.

**B. Cross-Appeal**

Janet summarily challenges the portion of the decree requiring her to pay Gary $50,000. Because the district court treated the parties equitably in its overall property distribution, we affirm. *See* Iowa Code § 598.21(5)(i) (instructing courts to consider each parties' economic circumstances in determining an equitable property division); *Rhinehart*, 704 N.W.2d at 683 ("[T]his court [considers] nonmarital assets that are available for the future support of a spouse in determining an equitable allocation of marital property.").

## IV. Conclusion

Janet and Gary did not have a long-term marriage, which distinguishes this case from *Fennelly*. *See* 737 N.W.2d at 99. Janet is sixty years old, is currently not employed, and has some health issues. While she may be able to gain some employment, Janet is highly unlikely to earn an income equivalent to Gary's wages. Significant to the property division is the fact the decree awarded no alimony to Janet. In light of her age, education, lack of employment, and past work experience, she will need the income from her inheritance to sustain her standard of living. At age fifty-three, Gary is younger and earns an income sufficient to replicate the parties' standard of living during the marriage. Gary already has some retirement savings, and he received $50,000 in the decree. In consideration of all these facts, we conclude the property division is equitable to both parties.

**AFFIRMED.**