# IN THE COURT OF APPEALS OF IOWA

No. 17-1548
Filed February 6, 2019

IN RE THE MARRIAGE OF BRIDGET ANNE DRENTER
AND JOHN DRENTER

Upon the Petition of
**BRIDGET ANNE DRENTER,**
      Petitioner-Appellant/Cross-Appellee,

**And Concerning**
**JOHN DRENTER,**
      Respondent-Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

A husband and wife appeal the decree dissolving their marriage.

**AFFIRMED AS MODIFIED AND REMANDED.**

Michael J. Motto of Bush, Motto, Creen, Koury & Halligan, P.L.C., Davenport, for appellant/cross-appellee.

Jack E. Dusthimer, Davenport, for appellee/cross-appellant.

Considered by Potterfield, P.J., and Bower and McDonald, JJ. Tabor, J., takes no part.

**McDONALD, Judge.**

Bridget and John Drenter were married for thirty-four years prior to divorcing in August of 2017. They now appeal and cross-appeal the decree dissolving their marriage. In her appeal, Bridget challenges the district court's division of marital assets as well as the amount and duration of spousal support. She requests appellate attorney fees. In his cross-appeal, John contends the district court should have credited him for house payments he made during the parties' separation prior to entry of the dissolution decree.

I.

This court's review of dissolution proceedings is de novo. *See In re Marriage of Thatcher*, 864 N.W.2d 533, 537 (Iowa 2015); *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013); *In re Marriage of Shanks*, 758 N.W.2d 506, 510 (Iowa 2008). We consider "the entire record and decide anew the factual and legal issues preserved and presented for review." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995) (citing *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992)); *In re Marriage of Fedorchak,* No. 13-0466, 2013 WL 6116888, at *1 (Iowa Ct. App. Nov. 20, 2013) (quoting *Kleist*, 538 N.W.2d at 276); *accord In re Marriage of Pelletier*, No. 12-1704, 2013 WL 2637458, at *2 (Iowa Ct. App. June 12, 2013). "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." *Hensch,* 902 N.W.2d at 824. As a general rule, this court will not modify a dissolution decree

unless the district court failed to do equity. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *cf. In re Marriage of Graves*, No. 13-1426, 2014 WL 3511879, at *2 (Iowa Ct. App. July 16, 2014).

II.

We first consider the district court's division of marital property. "The partners to a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Miller*, 552 N.W.2d 460, 463 (Iowa Ct. App. 1996). An equitable division of property need not be an equal division. *See In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005). However, "it is generally recognized that equality is often most equitable." *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007) (quoting *Rhinehart*, 704 N.W.2d at 683).

In this case, the district court did not equally divide the parties' property. The district court awarded John net assets valued at $227,997.19, which included the family home and five individual retirement accounts ("IRAs") he held. The district court awarded Bridget net assets valued at $97,606.64, which included the value of five additional IRAs she held. The district court divided the assets in this manner because it found Bridget dissipated the parties' marital property. The district court found dissipation in two respects. First, the district court found Bridget was a spendthrift over the course of the marriage and her spending significantly decreased the value of the property the parties could have had but for her spending. Second, the district court found Bridget dissipated her IRAs. The record shows the parties had ten IRAs between them, which they divided at the time of separation. The accounts in John's name totaled $31,429.96, and the accounts in

Bridget's name totaled $28,823.33. Between the time of the parties' separation and the time of trial, Bridget liquidated her IRAs and spent the funds. After finding Bridget dissipated the parties' assets, the district court concluded the pre-separation value of Bridget's IRAs should be used when calculating Bridget's share of the marital property. The district court further concluded that Bridget's dissipation of assets militated against an equal division of the parties' remaining property.

In determining whether the district court's division of property was equitable, we first address the issue of dissipation. When making a property distribution, a court may generally consider a dissipation or waste of marital assets. "A spouse dissipates assets when they lose or dispose of assets that should have been in the marital property division at the time of the divorce." *In re Marriage of Nelson*, No. 16-0293, 2017 WL 3505290, at *2 (Iowa Ct. App. Aug. 16, 2017). "In determining whether dissipation has occurred, courts must decide '(1) whether the alleged purpose of the expenditure is supported by the evidence, and if so, (2) whether that purpose amounts to dissipation under the circumstances.'" *Fennelly*, 737 N.W.2d at 104 (quoting Lee R. Russ, Annotation, *Spouse's Dissipation of Marital Assets Prior to Divorce as Factor in Divorce Court's Determination of Property Division*, 41 A.L.R.4th 416, 421 (1985) [hereinafter *Dissipation in Division*]). The first part of the inquiry "is an evidentiary matter and may be resolved on the basis of whether the spending spouse can show how the funds were spent or the property disposed of by testifying or producing receipts or similar evidence." *Id.* "It is not enough for a spouse to merely show the incurrence of expenditures during the period of separation. The spouse also must show a nexus between the

payment of the expenses and the use of the marital assets at issue." *In re Marriage of Kimbro*, 826 N.W.2d 696, 701 (Iowa 2013). The second part of the inquiry considers:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*Fennelly,* 737 N.W.2d at 104-05 (quoting Russ, *Dissipation in Division*, at 421).

The district court's legal conclusion and finding that Bridget's spending over the course of the marriage constituted dissipation is not supported by the law or the record. Legally, the dissipation doctrine applies only "when a spouse's conduct *during the period of separation* 'results in the loss or disposal of property otherwise subject to division at the time of divorce.'" *Kimbro*, 737 N.W.2d at 702-02 (emphasis added) (quoting *In re Marriage of Burgess*, 568 N.W.2d 827, 828 (Iowa Ct. App. 1997)). Generally, one spouse's historical spending patterns prior to the time of separation are immaterial to the dissipation inquiry. Even if the dissipation doctrine applied to pre-separation conduct, the record does not support the finding that Bridget's spending was so extravagant that it amounted to dissipation. Instead, the record shows only John's generalized grievances that Bridget spent too much money. These grievances were peppered with a few anecdotes of Bridget's alleged extravagance—for example, Bridget once spent thirty-one dollars at lunch with friends. The record lacks sufficient financial records or other detailed testimony to support a finding that Bridget's historical spending practices, to which John acquiesced over thirty-four years, constituted dissipation.

On de novo review, and in consideration of all of the relevant factors, the district court's finding that Bridget dissipated her IRAs is not supported by the record. There are transitional expenses associated with a dissolution proceeding as the parties transition from married life to single life. *See In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *17 (Iowa Ct. App. Oct. 10, 2018) (McDonald, J., concurring specially) (recognizing that there are costs in "establish[ing] an independent household" post dissolution). Bridget bore the brunt of those transitional costs in this proceeding. When the parties separated, John remained in the marital home; Bridget was required to find and furnish a new residence. She was required to sell her old vehicle for scrap and purchase a different vehicle. While Bridget did receive temporary support, the evidence shows Bridget had very few liquid assets to cover her transitional costs and other expenses. Bridget used the proceeds to purchase a vehicle and pay for her attorney fees, moving costs, rent, food, medication, and other expenses. Under the circumstances, Bridget's liquidation of her IRAs and use of the proceeds does not support a finding of dissipation. *See Fennelly*, 737 N.W.2d at 106 (stating the dissipation doctrine does not apply if the spending spouse used the monies for "legitimate household and business expenses").

The district court's remedy after finding dissipation was also inequitable. If a party dissipates a marital asset, the "asset is included in the marital estate and awarded to the spouse who wasted the asset." *Id.* at 106 n.6; *accord In re Marriage of Nelson*, No. 16-0293, 2017 WL 3505290, at *2 (Iowa Ct. App. Aug. 16, 2007) (stating the court may consider the value of the dissipated property when distributing the marital property). The district court did that in this case. However,

the district court found the fact of dissipation should also result in the uneven distribution of the remaining marital property. As explained above, the record does not support a finding of dissipation. Even if the record did support such a finding, there is no equitable reason to conclude the remedy for dissipation of a particular asset is to award a disproportionate amount of the remaining property to the other party.

Despite the property division greatly favoring John, he also argues the division was inequitable. John claims the district court's order on temporary allowances entitled him, under the law of the case doctrine, to credit for the house payments he made during his separation from Bridget. John's argument is without merit. The law of the case doctrine is inapplicable here. It applies to the effect of appellate decisions and not temporary orders. *See Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006) ("Under the law of the case doctrine, 'an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case.'" (quoting *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000)). Further, as a factual matter, John was awarded the marital home, resulting in him receiving the benefit of the house payments in the form of increased home equity.

In light of the foregoing, we conclude the district court's division of marital property was inequitable, and we modify the same. Under the facts and circumstances of this case, an equal division of the marital property is most equitable. In dividing the property, we note Bridget concedes the pre-separation value of her IRAs should be included as an asset on her side of the ledger. As

such, we affirm the district court's division of property but modify the decree to increase the amount of John's equalization payment from $50,000 to $65,195.

III.

We next consider whether the district court's award of spousal support was equitable. The district court awarded Bridget "$1,500 per month as spousal [support] until such time as Bridget is eligible to supplement her insurance with Medicaid/Medicare, John dies or Bridget remarries." Bridget challenges the amount and duration of the award.

Our courts have historically identified three types of spousal support: traditional, rehabilitative, and reimbursement. *See In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015); *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). Our courts have also, in certain circumstances, recognized a fourth category of spousal support: transitional. *See Hansen*, 2018 WL 4922992, at *16 (McDonald, J., concurring specially). When deciding whether to award one of the traditionally recognized forms of spousal support and the amount and duration of any such award, our courts consider a host of factors:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to [Iowa Code] section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that

enjoyed during the marriage, and the length of time necessary to achieve this goal.
g. The tax consequences to each party.
h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
i. The provisions of an antenuptial agreement.
j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1)(a)-(j) (2017); *In re Marriage of Schenkelbert*, 824 N.W.2d 481, 486 (Iowa 2012) (quoting Iowa Code § 598.21A(1)(a)-(j)).

The parties do not dispute traditional spousal support is appropriate here. Traditional spousal support "provide[s] the receiving spouse with support comparable to what he or she would receive if the marriage continued." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997). It is appropriate "in long-term marriages where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'" *Gust*, 858 N.W.2d at 410 (quoting *In re Marriage of Francis*, 442 N.W.2d at 62-63 (Iowa 1989)). "[M]arriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410-411. Here, the marriage lasted thirty-four years.

Bridget does contest the amount of spousal support awarded. When determining an amount for traditional spousal support, we consider need and ability to pay. *Id.* at 411. "In determining need, we focus on the earning capability of the spouses, not necessarily on actual income." *Id.* The historical income of the parties provides a starting point for determining earning capacity. *Id.*

The record reflects Bridget has a limited earning capacity and a need for spousal support and John has the ability to pay. At the time of trial, Bridget was

fifty-five years old. During most of the marriage, Bridget was a stay-at-home mother and homemaker. The record reflects she has not worked outside the home on a full-time basis since 2003. The prospects for Bridget to retrain, reenter the workforce, and earn any significant income are limited. She has limited and dated work experience. She has no post-secondary education. She also suffers from a number of mental-health and physical conditions that, according to her, limit her ability to work. In contrast, John has a strong employment record. He has worked for the same company for the past twenty years and is currently working in the capacity of a mechanical engineer. At trial, John speculated his employment may be in jeopardy due to his employer being purchased by another company. However, at the time of trial, John's concerns were mere speculation. John has also farmed since 2008. Over the last five years, John has averaged an annual income of $186,009.

In considering all of the relevant factors, including the duration of the marriage, the parties' historical standard of living, Bridget's limited earning capacity, and John's established earnings history, we conclude spousal support in the amount of $1500 per month is inequitable. We increase the amount of the spousal support award to $3000 per month.

Bridget also challenges the duration of the spousal support award. She argues it is inequitable to terminate the spousal support award upon her eligibility to supplement her insurance with Medicaid/Medicare. We agree. "Traditional alimony is 'payable for life or so long as a spouse is incapable of self-support.'" *In re Marriage of Olson*, 705 N.W.2d 312, 316 (Iowa 2005) (quoting *Francis*, 442 N.W.2d at 64); *accord Hettinga*, 574 N.W.2d at 922; *In re Marriage of O'Rourke*,

547 N.W.2d 864, 866 (Iowa Ct. App. 1996). Here, the record reflects Bridget's need for spousal support goes far beyond her need for medical insurance.

Bridget does not have the means to support herself. Even when she re-enters the workforce, she will need long-term support in order to continue to live the lifestyle to which she became accustomed during the thirty-four year marriage. Therefore, we also modify the spousal support award to terminate if Bridget dies, John dies, or Bridget remarries.

IV.

Finally, we consider Bridget's request for appellate attorney fees. "An award of attorney fees is not a matter of right, but rests within the court's discretion." *In re Marriage of Darling*, Nos. 0-345, 99-1495, 2000 WL 1289029, at *3 (Iowa Ct. App. Sept. 13, 2000); *accord Johnson v. Hirschfield*, No. 15-1452, 2016 WL 1697086, at *4 (Iowa Ct. App. Apr. 27, 2016). When deciding whether to award attorney fees, the court takes into consideration "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal." *In re Marriage of Fruchtenicht*, Nos. 1999-591, 99-0701, 9-852, 2000 WL 279032, at *4 (Iowa Ct. App. Mar. 15, 2000); *In re Marriage of Ales*, 592 N.W.2d 698, 704 (Iowa Ct. App. 1999). While John has an established income, Bridget has yet to attain employment. When she does, her income will be significantly lower than John's. Therefore, because of Bridget's need and John's ability to pay, we grant Bridget's request for appellate attorney fees. *See Palmer v. Lerma*, No. 99-1704, 2001 WL 293696, at *3 (Iowa Ct. App. Mar. 28, 2001) (awarding appellate attorney

fees to wife when husband was employed full time and wife was employed part time). We remand to the district court to determine appropriate attorney fees.

V.

For the foregoing reasons, we affirm the judgment of the district court as modified and remand this matter for calculation of reasonable appellate attorney fees.

**AFFIRMED AS MODIFIED AND REMANDED.**