In re the MARRIAGE OF Deborah Catherine RHINEHART and Richard Scott Rhinehart,

Upon the Petition of Deborah Catherine Rhinehart, Appellee,

and

Concerning Richard Scott Rhinehart, Appellant.

No. 04–0494.

Supreme Court of Iowa.

Oct. 7, 2005.

Elizabeth A. Rosenbaum, Sioux City, for appellant.

Barbara F. Orzechowski of Klass Law Firm, L.L.P., Sioux City, for appellee.

TERNUS, Justice.

The appellant, Richard Scott Rhinehart (Scott), was granted further review of the court of appeals decision modifying the district court's decree in this dissolution-of-marriage action. At this stage in the proceedings, the dispute between Scott and his former wife, appellee Deborah Catherine Rhinehart (Deborah), centers primarily on whether the trial court gave sufficient consideration to Deborah's interest in a family trust when the court awarded alimony to Deborah and divided the marital assets. Scott criticizes the trial court's refusal to attribute any value to Deborah's interest in the undistributed earnings of the trust when the court allocated the parties' property. Scott also contends Deborah's interest in trust income should have been reflected in a reduced alimony award. Finally, Scott claims the trial court overestimated Deborah's financial needs when it considered Deborah's liability for college expenses.

This case was transferred to the court of appeals, which affirmed the trial court with certain modifications. The principal modification concerned a valuation error in the district court's ruling. After Scott filed his notice of appeal, it was discovered that the trial court had placed a value of $6700 on a retirement account awarded to Scott, whereas the undisputed value of that account was actually $67,000. The court of appeals divided the extra $60,300 equally between the parties.

After considering the arguments of the parties, we agree with the trial court's disposition of the parties' property, as well as its alimony award. Accordingly, we disagree with the court of appeals' modification, awarding $30,150 from the Prudential retirement account to Deborah. Because we think under all the circumstances the entire account should be awarded to Scott, we do not disturb the trial court's decision awarding this asset to him.

I. *Background Facts and Proceedings.*

Prior to trial, the parties stipulated to many issues, including custody, visitation, child support, and post-secondary education subsidies. The remaining issues—alimony and division of marital assets—generated several disputes, but we limit our discussion to the facts pertinent to those matters that remain contested on further review.

The parties were married in 1979 after Scott had finished one year of law school. Deborah was then employed as an elementary school teacher, and she has continued to teach to the present time. Scott completed law school and currently practices law with his father and another attorney. Deborah was forty-eight years old at the time of trial; Scott was forty-seven. Both are in good health. The couple has three daughters, Rachelle, Melissa, and Erika. At the time of trial, Rachelle had graduated from college and was self-sufficient; Melissa was twenty years old and a junior at the University of South Dakota; Erika was eighteen years old and a senior in high school.

The district court determined that Deborah had net annual earnings of $25,181 after various deductions, plus approximately $1546 in annual payments from the family trust. Scott's annual earnings varied from year to year, so the trial court used a five-year net earnings average of $122,527. After considering the financial needs of the parties and their income, the court awarded Deborah traditional alimony of $1800 per month for five years, and then $1100 per month until she reaches age sixty-five. (Deborah was also awarded child support, but that ruling is not challenged on appeal.)

The proper allocation of the marital assets was also contested at trial. In rejecting an equal division of the parties' property, the court relied primarily on the

probability that Deborah would receive substantial income from the trust during her retirement years, whereas Scott would have to earn and save any funds he would need for retirement. Therefore, Deborah received property valued at $213,082, and Scott received property valued at $226,677. Included in the property assigned to each party were their respective retirement accounts.

Scott appealed, challenging the alimony award and the property division. In addition, the parties agreed the trial court had erroneously valued one of Scott's Prudential retirement accounts. This asset, listed in the decree at a value of $6700, was actually worth $67,000. Scott and Deborah disagreed on who was entitled to the unallocated value.

The court of appeals affirmed the amount of alimony awarded by the district court,[1] but modified the property division to account for the additional value of the Prudential account. The court of appeals concluded it was equitable to divide the extra $60,300 in the Prudential account equally, awarding $30,150 to each party. Scott's application for further review was granted. He continues to claim the alimony award to Deborah is excessive. He also challenges the property award, claiming (1) Deborah's interest in the undistributed earnings of the trust that accrued during the marriage should be subject to division, and (2) the entire Prudential account should be awarded to him.

## II. Scope of Review.

■ Our review is de novo. See *Zinger v. Zinger,* 243 N.W.2d 639, 640 (Iowa 1976). In undertaking our review, we examine the entire record and decide anew the issues properly presented. See *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). Although this court is not bound by the findings of the trial court, we give weight to them. *Id.*

## III. Alimony.

Scott's principal challenge to the alimony award is the failure of the district court to consider Deborah's "vested interest" in the trust in setting the amount of alimony. He also complains that the court considered Deborah's obligation to pay an educational subsidy for the two younger children in determining how much financial support she needed. We address each contention separately.

■ A. *Trust income.* To decide whether the alimony was set too high in view of Deborah's interest in the family trust, it is first necessary to determine the nature of Deborah's interest. In 1969, Deborah's parents, Richard and Maxine Collison, established a discretionary support trust. Maxine was the trustee, and Deborah and her eight siblings were designated as beneficiaries. After Maxine passed away in 1991, Richard and his nine children executed an amended trust agreement. Four of Deborah's siblings were named as successor co-trustees. The co-trustees have discretion to pay out income from the trust to the beneficiaries after payment of any taxes and assessments on that income. Any payout must be in equal proportions to each of the beneficiaries. In addition, any income not distributed is to be reinvested in the principal of the trust. By its terms, the trust will not terminate during Richard's lifetime, and will continue in existence thereafter for no longer than twenty-five years. Upon termination, the remaining corpus is to be divided equally among the surviving bene-

---

1. The court of appeals modified the district court's decree by ordering that alimony terminate upon Deborah's remarriage. Implicit in our affirmance of the district court judgment is our rejection of this modification. Should Deborah remarry, Scott will have the opportunity to seek a modification of the alimony award. See Iowa Code § 598.21(8)(*g*).

ficiaries or their estates. Although the trust instrument states the trust is irrevocable, it expressly reserves to Richard, the grantor, the right to amend the trust.

Records were introduced showing that trust income was customarily allocated to the beneficiaries each year, but only part of the income was actually distributed to the beneficiaries. For example, for the tax years 1990 through 2002, the schedule K–1 tax forms for Deborah showed a total of $210,976 of trust income allocated to her, but only $87,876 was actually distributed to her. The majority of the income received from the trust was used to pay income taxes attributable to the trust income and income tax penalties due to the trust's failure to make estimated payments. Only the remainder, an average of approximately $1500 annually, was disposable income to Deborah and Scott. Income that was not distributed to the beneficiaries was used to pay trust expenses or was added to the trust principal and reinvested.

Scott argues Deborah's interest in the trust fund "was the equivalent of a vested pension account." He claims she has a current vested interest in the trust in the form of the reinvested income, and that interest warrants a reduction in alimony to $400 per month. He relies on our cases stating that inherited and gifted property can be considered on the issue of alimony. See, e.g., In re Marriage of Moffatt, 279 N.W.2d 15, 20 (Iowa 1979). We reject Scott's argument, as did the court of appeals and district court.

Deborah's interest in the trust is not vested. The trust can be unilaterally amended by her father at any time, a power that allows him to change the beneficiaries. Scott cites Iowa Code section 633.2202(1) to support his argument that Deborah cannot be removed as a beneficiary, at least not without her consent. That statute states in relevant part: "An irrevocable trust may be modified or terminated upon the consent of the settlor and all of the beneficiaries." Iowa Code § 633.2202(1) (2003). This statute, however, is a default provision that applies only if the trust instrument contains no provision to the contrary. See id. § 633.1105 ("The provisions of a trust shall always control and take precedence over any section of this trust code to the contrary."); Martin D. Begleiter, In the Code We Trust—Some Trust Law for Iowa At Last, 49 Drake L.Rev. 165, 183 (2001) (stating "the Trust Code is a series of default provisions, to be used when the drafter has not included in the governing instrument language controlling the situation").

In addition to the possibility that Deborah could be removed as a beneficiary, payment of trust income is at the discretion of the co-trustees, and income not distributed is added to the principal. Therefore, Deborah has no right to the allocated, but undistributed, income from the trust. Consequently, it would not be appropriate to treat the undistributed income from the trust as a current source of financial support that would alleviate Deborah's need for alimony.[2] We conclude there is no basis to modify the alimony award based on Deborah's interest in the income generated by the family trust fund.[3]

2. On the other hand, the trial court appropriately considered the net distributed income from the trust as funds available to Deborah to meet her financial needs.

3. Scott challenges a statement made by the district court in the decree that Scott could seek a modification of the alimony award should Deborah begin to receive substantial payments from the trust. We think the court was correct in stating Scott could seek a modification if circumstances should change substantially, but it would be premature to determine in this case the circumstances under which Scott would be entitled to a modification. See generally Iowa Code

B. *Educational subsidies.* Scott claims the court improperly considered Deborah's responsibility to contribute to her children's college educations in assessing her need for alimony.[4] He argues requiring him to "pay $1800 per month for five years effectively results in the circumvention of Iowa Code section 598.21(5A)(3)." *See* Iowa Code § 598.21(5A)(3) (stating educational expenses not covered by child's expected contribution shall be apportioned by the court to each parent). It is true the trial court noted in its discussion of the alimony issue that it took "into consideration the fact that Deborah will only be receiving child support for a relatively short time, and will then be required, in accordance with the parties' agreement, to pay an educational subsidy for both Melissa and Erika." When the court focused on actual financial need, however, it observed that neither party had included in their itemization of expenses "any projected costs for Melissa and Erika's college educations." The court's calculation of Deborah's need and Scott's ability to pay did not account for the responsibility of either party for educational subsidies. Therefore, notwithstanding the trial court's comment, we do not believe the court improperly increased Deborah's alimony to make Scott reimburse Deborah for educational subsidies that were her responsibility. We affirm the trial court's alimony award.

IV. *Property Division.*

Two issues remain with respect to the division of the parties' marital property. First, Scott claims the district court should have included the undistributed, reinvested trust income allocable to Deborah as a marital asset, subject to division by the court. Second, Scott disagrees with the court of appeals' decision to give Deborah $30,150 from the retirement fund awarded to him by the trial court. Again, we address each matter separately.

■ A. *Undistributed trust income.* As we noted earlier, Deborah has no present right to the undistributed income that has been added to the principal of the trust. Therefore, it is not her property so as to be subject to division by the court. Even if this income could be distributed to Deborah upon her demand, it does not automatically become a marital asset. Iowa Code section 598.21(2) provides that property inherited by or gifted to one party during the marriage is not subject to division unless it would be inequitable to the other party or the parties' children. Scott claims it is inequitable not to award some portion of the reinvested trust income to him because he and Deborah had to pay income taxes and penalties on these funds. This argument ignores the fact that any tax liability the parties incurred as a result of the allocation of trust income to the beneficiaries was covered by distributions of trust income to Deborah.[5] Scott has done nothing, financially or otherwise,

---

§ 598.21(8)(*a*), (*b*) (permitting court to subsequently modify alimony award "when there is a substantial change in circumstances" in view of a party's receipt of an inheritance or gift or in view of a change in a party's income or resources). Consequently, we give this issue no further attention.

4. Prior to trial, the parties stipulated they would contribute to their children's post-secondary education expenses as provided in Iowa Code section 598.21(5A).

5. There were apparently two years in which the distributed income was insufficient to cover the parties' tax liability on the sum listed on schedule K–1. These minimal amounts, totaling less than $500, were more than offset in other years by the distributions in excess of the parties' tax liability. Therefore we do not consider the small amount of taxes paid by the parties in two years to be significant enough to affect our analysis when viewed in context.

to preserve this asset or increase its value. *Cf. In re Marriage of Lattig*, 318 N.W.2d 811, 815 (Iowa Ct.App.1982) (considering whether appreciated value of property brought into the marriage was "fortuitous or due to the efforts of the parties" in deciding whether to include appreciated value as a marital asset). The trial court properly refused to divide the undistributed trust income as a marital asset. *See In re Marriage of Muelhaupt*, 439 N.W.2d 656, 661 (Iowa 1989) (reversing trial court's award to husband of thirty percent of wife's expected future inheritance).

■ B. *Unallocated retirement account.* The trial court awarded a Prudential retirement account to Scott, but listed this asset in the decree at a value $60,300 less than its actual value. This error has caused the parties to dispute whether the trial court actually intended to give Scott an asset with a value of $67,000. Because our review is de novo, it is not necessary for this court to ascertain the intent of the district court. Based upon our own review of the statutory factors relevant to an equitable distribution of marital property, we conclude the district court's decision to award this asset to Scott should not be disturbed.

■ Iowa law requires that marital property be divided "equitably between the parties," considering several factors. Iowa Code § 598.21(1). Although an equal division is not required, it is generally recognized that equality is often most equitable. *See In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979). This traditional goal of equality appears to have motivated the court of appeals to divide the $60,300 equally between Deborah and Scott. That division resulted in Scott receiving approximately $13,000 more in assets than Deborah received.

The trial court, whose property division resulted in the same $13,000 difference, justified awarding more marital property to Scott on the basis that "Deborah is reasonably likely to receive substantial funds from her father's trust [at] about the time she would retire from teaching." It noted that Scott, on the other hand, would "have to earn and save any funds he intends to use in his retirement years." We agree with these observations and rely on them in deciding to award the entire $60,300 to Scott.

In explaining our decision, we first note the trust currently has a value in excess of $5 million. Deborah has a future interest in one-ninth of this fund, an interest with a present value of more than $550,000. *See In re Will of Uchtorff*, 693 N.W.2d 790, 793 (Iowa 2005) (stating remainder interest in trust fund is a future interest); *Henkel v. Auchstetter*, 240 Iowa 1367, 1380, 39 N.W.2d 650, 657 (1949) (same). The principal of this trust has appreciated considerably since it was established, and there is nothing in the record to suggest that it will not continue to increase in value in future years. Although Deborah's father has the power to change the beneficiaries of the trust, there is no evidence indicating he is likely to do so.

■ Clearly, it is permissible to consider Deborah's future interest in this trust in determining an equitable division of the parties' property. Iowa Code section 598.21(1)($i$) instructs the court to consider, among other factors, the "economic circumstances of each party, including pension benefits, vested or unvested, and *future interests*." (Emphasis added.) In addition, this court has in prior cases considered nonmarital assets that are available for the future support of a spouse in determining an equitable allocation of marital property. *See, e.g., In re Marriage of Boyer*, 538 N.W.2d 293, 296 (Iowa 1995) (holding trial court properly considered husband's future entitlement to social security benefits having much greater value

than wife's social security benefits in deciding to award wife more marital assets); *In re Marriage of Schissel,* 292 N.W.2d 421, 427 (Iowa 1980) (holding dissolution court properly took into account husband's nondivisible military retirement pay in adding $8000 to wife's share of marital property); *accord In re Marriage of Fall,* 593 N.W.2d 164, 168 (Iowa Ct.App.1999) (modifying decree to award entirety of wife's retirement account to wife in view of husband's inherited property and his undistributed interest in family trust account). As we said in *Boyer,* it is appropriate to adjust the division of marital property "on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement." 538 N.W.2d at 296.

In the present case, then, we do not ignore the economic reality of the parties' relative financial futures. Although Deborah has contributed to the parties' accumulation of assets, her future need for those assets is considerably less than Scott's need. Therefore, we think it most equitable to award Scott the full value of the Prudential account. Although this decision gives Scott $73,895 more in marital property than Deborah receives, we are confident Deborah's retirement income will be supplemented generously by her remainder interest in the family trust fund. Because the trial court awarded the Prudential account to Scott, we find no reason to modify the trial court's judgment.

### V. *Summary.*

Deborah has no present right to be paid income from the trust or to demand that the undistributed income from prior years be distributed to her. Therefore, her interest in the trust does not lessen her need for financial support from Scott. In addition, we do not think the trial court set alimony at such a level that it improperly shifted Deborah's responsibility for post-secondary education expenses to Scott.

Therefore, we refuse Scott's request that we reduce the alimony award made by the district court.

We also reject Scott's claim that Deborah's interest in undistributed trust income should be included as a marital asset subject to division by the dissolution court. Deborah has no enforceable right to that income. Because we think Deborah's future interest in the trust is substantially certain to be realized, however, we affirm the trial court's decree awarding a greater share of marital property to Scott. The fact the district court erroneously listed one of the Prudential accounts at $60,300 less than its actual value does not convince us that the trial court's disposition of the parties' property should be modified.

We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except CADY and STREIT, JJ., who dissent.

CADY, J. (dissenting in part).

I respectfully dissent from the majority's division of the Prudential retirement account and, in turn, the division of marital assets that awards one spouse $75,000 more than the other spouse. The decision of the majority to award a greater share of the marital property to one spouse casts a dark cloud over the principle of equitable distribution of property in this state, and subverts, if not denigrates, the core concept of a marriage as an equal partnership. The approach adopted by the majority is not only a step back toward the dark ages of marital rights; it improperly intrudes into the legislative arena by undermining the legislative declaration to exclude inherited property from the divisible estate.

The concept of an equitable division of property in a dissolution of marriage does not require an equal division of property. *In re Marriage of Schriner*, 695 N.W.2d 493, 499 (Iowa 2005) (citing *In re Marriage of Webb*, 426 N.W.2d 402, 405 (Iowa 1988)). Instead, it requires the division of property made by the court to be fair. *See In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) ("Property division is based on each spouse's 'right to "a just and equitable share of the property accumulated as the result of their joint efforts."'" (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa 1989))); *see also In re Marriage of Anliker*, 694 N.W.2d 535, 542 (Iowa 2005) ("[I]n deciding what constitutes an equitable distribution of property, there need not be an equal division *if* the division is justified and equitable under all of the circumstances and factors set forth in section 598.21(1)." (Citation omitted; emphasis added.)). It recognizes that certain circumstances of a marriage can make it fair to award an unequal division of marital property at the time of divorce. *See id.* Yet, the key to an unequal equitable distribution is that the factors supporting the unequal division must reveal the fairness in permitting one spouse to leave the marriage with more property of the marriage than the other spouse. In other words, the factors must override the basic concept of the marriage as an equal partnership that otherwise supports an equal division of all property accumulated by either party to the marriage, except property excluded from the divisible estate by our legislature.

By all accounts, save a single factor relied upon by the majority in this case, the circumstances of the marriage between Deborah and Scott support an equal division of marital property. Deborah and Scott were married twenty-five years. They raised three children and were attentive to their needs. Each spouse contributed to the marriage in endless ways.

Deborah is an elementary school teacher, and Scott is a lawyer. They were married when Scott was still in law school. They both enjoy good health, are relatively young, and are successful in their professions. The property accumulated during the twenty-five years of their marriage—nearly $600,000—was, undeniably, the result of their joint efforts throughout the marriage. The alimony award to Deborah was not structured to compensate for an unequal distribution of property.

The single factor identified by the majority to support awarding Scott $75,000 more in property than awarded to Deborah is that Deborah has a future beneficial interest of $550,000 in a trust fund established by her father. This future interest, of course, is not marital property subject to the property division, but is excluded as a divisible asset. *See* Iowa Code § 598.21(1) (excluding "inherited property and gifts received by one party" from divisible property); *In re Marriage of Schriner*, 695 N.W.2d at 499 (stating a future interest that accrues during the marriage is subject to equitable distribution, but one that accrues after the divorce is not); *Williams v. Massa*, 431 Mass. 619, 728 N.E.2d 932, 941 (2000) (stating contingent remainder interests in a trust are "mere expectancies, comparable to a future inheritance, which are not sufficient property interests to be considered a part of the marital estate" (citation omitted)). There is no claim, or facts to support a claim, that it would be inequitable to Scott or the children not to include the inheritance in the divisible estate. *See* Iowa Code § 598.21(2). Additionally, Deborah's interest in the trust is not vested, and she could be removed as a beneficiary at any time. Yet, while the majority properly excludes the inheritance from the divisible estate, it brings it into the division process through the back door by using it as a factor to justify an unequal division of the divisible

property. Under the approach adopted by the majority, Deborah's future interest supports an unequal division of property because her "future need for [the parties' marital] assets is considerably less than Scott's need." In other words, Scott's need for the marital property is greater relative to Deborah's need.

Clearly, "the economic circumstances of each party" is a factor courts may consider in determining an equitable distribution of property. *See* Iowa Code § 598.21(1)(*i*) (listing as a factor to be considered in equitable distribution "[o]ther economic circumstances of each party including pension benefits, vested or unvested, and future interests"). Additionally, it is even permissible to consider future economic circumstances that involve nonmarital assets, such as social security and military pensions. *See In re Marriage of Boyer*, 538 N.W.2d 293, 294–96 (Iowa 1995); *In re Marriage of Schissel*, 292 N.W.2d 421, 424–27 (Iowa 1980). For example, in *Boyer*, we held the disproportionate future expectation of social security benefits between the spouses was an economic circumstance that could be used as a factor to support a disproportionate division of the marital assets. *Boyer*, 538 N.W.2d at 296. However, we were careful to point out that it was fair to do so because the wife had left the workforce after the marriage to become a fulltime homemaker and gave up her ability to build up her own social security benefits as the husband was able to do during the marriage. *Id.* Under these circumstances, we said it would "be ironic to bar [the wife] from having the disproportion in the anticipated benefits weighed as a general factor in [the property division]." *Id.*

The important point is this: future economic circumstances involving nonmarital property of one spouse are properly considered in the division of property only when there is some circumstance of the marriage that makes it fair to do so. It is not the presence or the expectation of nonmarital property that justifies an unequal equitable distribution, but it is the circumstances within the marriage that justify consideration of the nonmarital property in making a property award. In *Boyer*, the circumstances that made it fair to consider nonmarital property related directly to the joint-efforts concept of a marriage and the variant roles assumed by the parties.

In this case, there are no circumstances of the marriage that make it equitable for the court to consider the expected future inheritance of Deborah in dividing the marital property. Clearly, the future economic circumstances of Deborah do not address or define "Scott's need." Such circumstances have nothing to do with the needs of Scott. In truth, Scott has no special needs of his own that a divorce court must address to reach an equitable distribution of the property accumulated during the marriage.

The relative-need standard articulated by the majority is totally detached from the concept of equity in the dissolution of a marriage. *See In re Marriage of Probasco*, 676 N.W.2d at 184 ("Property division is based on each spouse's 'right to "a just and equitable share of the property accumulated as the result of their joint efforts." ' " (quoting *In re Marriage of Francis*, 442 N.W.2d at 62)). As this case illustrates, this standard will necessarily lead to injustice. In this case, the existence of an inheritance only explains the nature of the economic circumstances; it does not explain the fairness of using an inheritance to divide the marital property. That explanation must come from the circumstances of the marriage. A standard that fails to consider such an analysis is inherently unfair and indirectly considers property, or a mere uncertain expectation of

future property, that the law does not allow to be directly considered. The relative-need standard also means a spouse cannot equally share in marital assets when the spouse happens to have wealth independent of the marriage.

The concept of an equitable division of property has taken on a new meaning in Iowa as a result of this case, far removed from the concept declared by our legislature and articulated by this court in the past. It means that future inheritance has now been injected as a factor in the division of property in all cases. It means a spouse may be deprived of the right to share in an equal distribution of the property of the marriage at the time of the divorce when the spouse is expected to receive an inheritance in the future. It means, in this case, Deborah will not share equally with her husband in the property she equally helped to accumulate during the marriage. This is inequitable and contrary to statute.

STREIT, J., joins this dissent.