# IN THE COURT OF APPEALS OF IOWA

No. 24-0087
Filed March 19, 2025

**NICHOLAS D. TUTTLE,**
        Petitioner-Appellant,

**vs.**

**KINLEY M. SCHAFFER,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


        The father appeals from a decree granting the mother's petition to modify custody and physical care of their minor child.  **AFFIRMED.**


        S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, for appellant.

        Andrea M. Flanagan of Flanagan Law Group, PLLC, Des Moines, for appellee.


        Considered by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Nicholas Tuttle appeals from a district court ruling granting Kinley Schaffer's petition to modify custody and physical care of their shared minor child. Nicholas argues that Kinley did not carry her burden to prove modification was warranted or that she should have physical care, that he received inadequate visitation, and that the child-support calculation should be revisited if we rule in his favor. We affirm the district court.

### I.     Background Facts and Proceedings

Nicholas and Kinley were never married but share a child born in 2019. The child was born with a medical condition that resulted in some developmental delays, physical limitations, and other special needs. Nicholas and Kinley's relationship deteriorated, and Nicholas eventually filed a paternity action leading to a stipulated custody decree that placed physical care with Nicholas and allowed Kinley visitation on a graduating basis. At the time of the original custody decree in 2021, Nicholas and Kinley both lived in Polk County. They agreed to joint legal custody and placing physical care of the child with Nicholas.

The backdrop coloring nearly all that's happened in this case is that Nicholas and Kinley have a history of chronic substance-abuse problems, including but not limited to use of cocaine and intravenous heroin. Both Nicholas and Kinley have quit using and relapsed multiple times over the course of their relationship and the life of this case.

About two months after the original custody decree, Nicholas was arrested for domestically abusing Kinley, and he ultimately pled guilty to non-domestic simple assault and criminal mischief after admitting he threw a lamp against a wall

and caused Kinley to fear him.[1]  Within a month of the assault, Nicholas relapsed on opiates.  He and Kinley soon started using drugs together and resumed their romantic entanglement.  Both parents' drug use escalated to the point they voluntarily agreed that Nicholas's grandparents would care for the child—with assistance from both parents' mothers.  At this point, the custodial agreement involving the extended family was informal and did not yet involve the court system.

That fall, Nicholas and Kinley each attempted to address their drug addiction at a community hospital in Des Moines.  Without dwelling on the specifics, this treatment attempt was unsuccessful, and both Nicholas and Kinley continued to use heroin.  A few weeks after Nicholas formally pled guilty to the assault, police responded to a report Nicholas had smashed the front and rear windshield glass of his mother's car with a brick during an argument.  Nicholas's mom told police he was having "emotional issues" and she did not wish to press charges.  Kinley was also present for this incident and described it as "really, really scary," and she said it reminded her of the domestic abuse Nicholas perpetrated while she was pregnant and after the child was born.

During this time, the parents also agreed that Kinley's mother could take the child to Colorado on an extended trip.  Eventually Kinley's mother grew concerned that Nicholas and Kinley were using drugs in the home while the child stayed with

---

[1] At the modification trial, Kinley testified to particulars of the assault that significantly exceed the factual basis for Nicholas's guilty plea.  And she testified to an occasion on which she was charged with assaulting Nicholas in what she described as "self-defense."  These facts are ultimately unnecessary to disposition of this appeal.  But we note the district court generally credited Kinley's testimony—although it did not single out this event for specific findings.

Nicholas's grandparents in Iowa.[2]  Kinley's mother petitioned a Colorado court for an emergency guardianship while the child was in her care.  Kinley ultimately joined her parents in Colorado, to—in her words—"break this toxic cycle that I was living in," end her troubled relationship with Nicholas, and successfully recover from addiction.  Nicholas's grandparents later petitioned for guardianship in Iowa.

Ultimately, the Iowa and Colorado courts decided the Iowa courts had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act. The Iowa court appointed Nicholas's grandparents as temporary guardians, ordered the child's return to Iowa, and granted both parents visitation.  Although the parties disputed the motive behind the guardianship, the Iowa district court hearing the custody case found Kinley's mother and Nicholas's grandparents were both acting in the child's best interests and trying to keep the child healthy and safe despite the parents' ongoing struggles with drug addiction.  And there is no real dispute that neither Nicholas nor Kinley could resume care of the child then; at that point, in Nicholas's words, they were both "junkies."

After moving to Colorado, Kinley entered substance abuse treatment, but she stopped attending mental-health therapy and contacting her Iowa probation officer, leading to a report of violation and warrant for her arrest.  She ultimately stipulated to the violation, and her probation was continued and transferred to Colorado.  These problems required her to re-start the clock for both outpatient substance-abuse treatment and her overall probationary sentence.  In the end, Kinley completed detox, weekly drug screens, inpatient rehabilitation, and

---

[2] This concern proved founded, as revealed by testimony in the guardianship case.

outpatient programming in Colorado. As of the modification trial, she was taking an opioid blocker—suboxone—three times a day as part of the Colorado treatment protocol. She testified that if she was granted physical care of the child, she intended to remain in Colorado and cooperate with visitation for Nicholas. She planned to live with her mother for the foreseeable future before seeking her own apartment.

Following failed attempts at treatment on his own, Nicholas's parents sought to involuntarily commit him for substance-abuse treatment. Those papers are not part of our record. But he was later committed by another court order to a county hospital following his relapse on intravenous heroin, cocaine, and prescription drugs. Nicholas's probation officer filed multiple reports of violation because Nicholas failed to disclose and was otherwise dishonest about his drug use and commitment for treatment; these violations ultimately resulted in Nicholas's arrest, revocation of his deferred judgment, incarceration, and unsuccessful discharge from probation. Upon completion of an inpatient commitment, providers recommended Nicholas complete an assessment and receive continuing care for his identified substance-use disorder. He did neither. But he did engage with a residential recovery program. He testified at trial that he didn't need continuing care or mental-health therapy (but did attend narcotics anonymous meetings) and that he continued to drink alcohol even while his sobriety was an issue in this case. When pressed on why he wasn't attending mental-health treatment or therapy, Nicholas was combative and testified "I'm not under any obligation to" and "I go to the gym. That, to me, is my mental health therapy."

In the lead-up to trial, both parents exercised visitation with the child while she remained in guardianship with Nicholas's grandparents. Nicholas argued he should retain physical care but agreed modification of visitation and support was or would be required. When asked what kind of visitation he would like if Kinley received physical care, he said: "I haven't put a lot of thought into that, but I would say, like, summer visitation. Probably some type of holiday schedule, and maybe one week out of every month if I plan to travel there [to Colorado]."

At trial, the court heard testimony from the attorney appointed to represent the child in the guardianship proceedings. The attorney primarily practiced juvenile and family law; she met with the child multiple times; and she visited the guardians' home, the child and Kinley's mother in Iowa, and Kinley's home in Colorado. The attorney explained that her recommendation in the guardianship case had been informed by her conclusion that Kinley was the most likely to regain custody based on her progress toward sobriety and Nicholas's lack of progress toward the same. She also said she was concerned that Nicholas and his family were not supportive of Kinley's relationship with the child.

After assessing some competing evidence and making credibility determinations, the district court found that, from December 2021 to spring 2022, "Kinley was actively engaged in her recovery while Nicholas continued to use heroin, cocaine, and alcohol. The result is that Kinley has six more months of sobriety under her belt than does Nicholas." The court specifically found Nicholas's testimony "that he had not been using drugs . . . lack[ed] credibility," and it "did not find his testimony concerning his sobriety credible." The court also generally noted the "credibility of Kinley" and "lack of credibility of Nicholas."

Based in part on these credibility findings, the district court found Kinley had progressed and "grown significantly in creating a stable and sober environment, while Nicholas appears to have most likely regressed." The court also made a fact-finding that "Nicholas is lacking the insight into his addiction that Kinley has." The court continued joint legal custody and ruled that Kinley was the superior parent for purposes of modification and placed physical care of the child with her, reasoning Nicholas "would provide less stability." And the court noted that its ruling was limited to choosing a "primary parent" independent of the concurrent guardianship proceedings. Nicholas appeals.

## II.  Standard of Review

We review custody and care decisions de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "[W]e examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). While we are not bound by the district court's fact-findings, we do give them weight—especially credibility determinations. *Thorpe*, 949 N.W.2d at 5.

## III.  Discussion

Nicholas challenges the modification of physical care, the amount of visitation he received under the modified decree, and the resulting child support obligation.

### A.  Physical Care

In seeking to disturb the physical-care status quo, Kinley had to prove by a preponderance of the evidence that conditions related to parenting the child have materially and substantially changed since the stipulated custody arrangement.

*See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *see also* Iowa Code § 600B.40 (2023) (applying marriage-dissolution custody and visitation provisions to children born out of wedlock). To be material and substantial, changed circumstances must meet three criteria: (1) the court did not contemplate those circumstances when entering the decree; (2) the changes are more or less permanent rather than temporary; and (3) the changed circumstances relate to the welfare of the child. *See Frederici*, 338 N.W.2d at 158. To warrant modification, the parent seeking to change physical care bears the burden to prove a superior ability to care for the child. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "The heavy burden upon a party seeking to modify [physical care] stems from the principle that once [physical care] of children has been fixed it should be disturbed only for the most cogent reasons." *Frederici*, 338 N.W.2d at 158.

It is not entirely clear to us in reviewing Nicholas's appellate brief which elements of the modification analysis he challenges, so we assume all three. As to the first, we find the complex parenting situation revealed by our detailed recitation of the facts was unquestionably not contemplated at the time of decree, satisfying that first requirement. The other elements require more discussion.

As to whether the changes are material and substantial in the sense that they are more or less permanent and relate to the child's welfare, we could perhaps rely on Kinley's move of more than 150 miles as material and substantial change on its own, since neither she nor Nicholas have custody or care of the child by virtue of the guardianship. *Cf.* Iowa Code § 598.21D. But we recognize the district court's focus was largely on the changes in the parents' sobriety and stability since

the decree. As this record reflects, a drug addict's road to recovery is never certain. But we find Kinley's demonstrated sobriety and recovery is sufficiently definite, especially in comparison to Nicholas's, to satisfy this element. In coming to this conclusion, we specifically rely on the district court's fact- and credibility-findings, given its advantaged position to resolve competing testimony and other evidence. And we recognize that this case may be in a different place or much more difficult if either Nicholas and Kinley had progressed or regressed differently. We find the change in Kinley's and Nicholas's caregiving abilities after the decree to be more or less permanent for purposes of this analysis.

We next consider whether Kinley satisfied her burden to prove she was a superior caregiver. Again drawing on the district court's extensive fact- and credibility-findings, we conclude on our de novo review that Kinley met her burden. While Kinley has made significant progress to establish her stability and sobriety, Nicholas has moved backward and engaged in drug- and alcohol-use much more recently. Like the district court, we are concerned with some of Nicholas' recent-to-trial behavior, including his continued use of alcohol and his reluctance to meaningfully engage with substance-abuse and mental-health treatment. Kinley is the superior caregiver based on the record evidence.

In his brief, Nicholas makes much of the distance Kinley has moved, which would impose a substantial burden on either him or Kinley depending on who received physical care. Contrary to Nicholas's claim, the district court did not "ignore[]" or "minimize[]"this geographic consideration. Nor do we. But this is one consideration among many, and the benefits attendant to the child residing in Iowa do not outweigh the benefits of a safe, stable, and sober home with Kinley, who

happens to reside in Colorado. And, despite Nicholas's unsupported suggestions to the contrary, there is no credible evidence in this record that the child will receive subpar or lesser special-needs services in Colorado as compared to Iowa.

There may not have been a perfect solution to the care-and-custody question in this case given its complexities and the geographic distance between the parties. But, in our de novo review, we largely agree with the district court's assessment. Discerning no basis for reversal, we affirm.

## B. Visitation

Nicholas also contends the district court afforded him insufficient visitation. He specifically requests additional visitation in three forms: (1) whenever Kinley's "family that lives in Colorado frequently travels to Iowa"; (2) all but two weeks of summer, instead of the two weeks ordered; and (3) all holidays be split between the parents, rather than just three.

In reviewing Nicholas's appellate argument about visitation, much of the focus is placed on the role *his family* has served in providing care for the child, rather than his role. Like the district court, we find it commendable that both parents' extended families stepped up to care for the child when the parents could not. But Iowa law does not empower us to grant grandparents or extended-family visitation rights, and much of the father's argument on appeal is a thinly-veiled request we do just that. In crafting a visitation schedule, the district court was tasked with balancing competing interests, including the importance of parenting time for Nicholas, disruption for the child due to travel, and the costs and inconvenience borne by the parties. We are not convinced we should tinker with

the visitation schedule here. But we single out one of Nicholas's requests for a little more discussion.

Nicholas's argument that he should receive visitation whenever Kinley's family visits Iowa has some logical appeal at first blush—after all, without the geographic distance between them, we think in all likelihood Nicholas would have received weekend visitation. We certainly encourage these families to continue to act in the child's best interest and go beyond the minimum visitation required by court order. But we do not think it is wise, feasible, or perhaps lawful to craft a conditional visitation order that turns on the voluntary travel of Kinley or her family members. While we can hope that Kinley and her family will accommodate Nicholas's requests for additional visitation when they and the child visit Iowa, we decline to order it. And so we decline to disturb the visitation order.

### C. Child Support

Nicholas's third argument contests child support. We understand his argument to be conditional: "In the event the district court's ruling on the modification . . . is reversed . . . ." Because we have affirmed the ruling, we do not address the issue further.

### IV. Disposition

We affirm the modification ruling in its entirety.

**AFFIRMED.**