**IN THE COURT OF APPEALS OF IOWA**

No. 24-1154
Filed May 21, 2025

**MARCUS A. HILDEN,**
        Plaintiff-Appellee,

**vs.**

**DEVIN L. TYER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary,

Judge.


        The mother appeals from a custody decree placing physical care with the

father. **AFFIRMED.**


        Nick E. Wingert, of Mayne, Hindman, Frey, Parry & Wingert, Sioux City, for

appellant.

        Deborah J. Morris of Tigges, Bottaro & Lessmann, LLP, Sioux City, for

appellee.


        Considered without oral argument by Ahlers, P.J., and Badding and

Buller, JJ.

**BULLER, Judge.**

Devin Tyer appeals from a custody decree placing physical care of her two children with their father, Marcus Hilden.  She argues the district court misweighed the relevant custodial factors and requests appellate attorney fees.   After considering the district court's implicit and explicit credibility findings, we affirm.

I.        **Background Facts and Proceedings**

Devin and Marcus were involved in a relationship from roughly 2014 to early 2022, but they never married.  While living together, they both worked full-time and both parented their two children, born in 2018 and 2020.  In resolving sometimes-conflicting testimony, the district court found "Marcus was as involved, if not more involved, than Devin with the parenting."

As of trial, Marcus worked full-time for a Sioux City asphalt company in eight-hour seasonal shifts.  In Marcus's view, this leaves him plenty of time to spend with the children without over-relying on a babysitter or family childcare.

Devin worked full-time for a Sioux City hospital system, worked part-time at a sporting-goods store, and donated plasma regularly for income.  Marcus testified that, throughout their relationship, Devin "had almost two jobs" and worked a lot of hours.  In Marcus's view, this indicated Devin preferred working to family time.  Devin testified that she needed the money to support the children in part due to Marcus's insufficient contribution to their household income.  And that she was "not good at sitting at home without [her] kids" and liked the discount from the sporting-goods store.

While they were together, both Devin and Marcus were involved with day-to-day parenting and childcare.  But after physical care of the children was placed

with her by the temporary-matters order, Devin relied heavily on Marcus's aunt for daycare, which led to some friction between the parties. As the district court put it, there was additional "discord and tension[]" relating to a "right of first refusal" established in the temporary-matters orders; the order provided that, if Devin was unavailable and relying on childcare for more than four hours, she had to offer Marcus additional parenting time to watch the children. The particulars of the discord would not add much to this opinion, and the parties agreed that the provision caused problems even if they disagreed on why. In the end, the court found Devin was "manipulative and controlling" and that she failed to support Marcus's rights or his relationship with the children. Similarly, the court found Marcus acted out toward Devin, which "demonstrated his immaturity, frustration, and anger with [her]." These disagreements and others, the court found, led to neither party trusting or communicating well with the other.

In deciding physical care, the district court concluded that both parties displayed immaturity and seemed to put the children in the middle. But the court found Devin was "more manipulative than Marcus," she tended to deny Marcus access to the children, and she sought to limit or frustrate his relationship with them. The court "[got] the feeling that [Devin] would rather have Marcus just not be involved in the children's lives." And these findings tipped the scales "ever so slightly in favor of Marcus on the physical-custody determination." The court considered joint physical care at some length but ultimately ruled it out based on many of the same considerations, with emphasis on the parties' poor communication, lack of respect for each other, high degree of conflict, and the

serious risk the children would become "pawn[s] in continued post-separation strife."

Devin appeals.[1]

## II.    Standard of Review

We review custody and care decisions de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "[W]e examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). While we are not bound by the district court's fact-findings, we do give them weight—especially credibility determinations. *Thorpe*, 949 N.W.2d at 5.

## III.    Discussion

Although this action is governed by Iowa Code chapter 600B (2024), we look to the factors in section 598.41 to determine physical care. *See* Iowa Code § 600B.40(2) (providing "section 598.41 shall apply" to chapter 600B proceedings). Section 598.41 sets forth a series of nonexclusive factors to guide our consideration. And our case law sets forth similar factors. *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Our overriding consideration "is the best interests of the child." Iowa R. App. P. 6.904(3)(n).

---

[1] Marcus waived his right to file an appellee's brief.

In her appellate brief, Devin disagrees with the district court's weighing and consideration of the facts adduced at trial. She urges that Marcus was not credible based on what she describes as inconsistencies in his testimony. And she puts a positive spin on her attempts to improve communication between the parties. At the outset, we acknowledge many of the facts referenced in Devin's appellate brief establish Marcus is not a perfect parent. Neither parent in this case is. We single out just two of Devin's factual arguments for further discussion.

First, Devin contends she proved Marcus domestically abused her. But the district court did not find these facts proven. Instead, the court observed that both parties had alleged physical abuse and neither proved the other abusive at trial. The district court was in an advantaged position to assess the credibility of witnesses, and we have no basis to disturb that court's finding from our seats removed from the action on appeal.[2] To the extent Devin believes evidence she submitted was overlooked and this issue was inadequately addressed in the ruling below, she did not file a Rule-1.904(2) motion, and we have no tools by which to relitigate the question at this juncture. She is owed no relief on this ground.

Second, Devin claims Marcus should not have received physical care because he did not exercise all of his parenting time under the temporary-matters order. As the district court noted, there were significant problems attendant the right-of-first-refusal provision, and both parties' behavior was less than ideal. There is also support in the record for the district court's conclusion that Devin

---

[2] We have reviewed the video evidence the parties submitted at trial. Like the district court, we find it less than conclusive. We also note Devin testified she slapped Marcus on one occasion. And Marcus's mother and sister-in-law testified they witnessed Devin punch or hit Marcus in the back of the head.

manipulated the situation with the provision, and we do not think she should reap the benefits of that manipulation by claiming now that Marcus did not exercise all of his time. That said, we share the frustration expressed by the district court below and Devin on appeal that the right-of-first-refusal provision's inartful drafting likely exacerbated conflict, and we note we would affirm the district court's ruling even absent the drama surrounding the provision and its impact on the parties' parenting time leading up to trial.

Both parents are suitable caretakers for the children. And in close cases with conflicting testimony, "we should defer to the trial court's detailed fact-findings and credibility assessment." *In re Rhyan*, No. 06-1490, 2008 WL 4472300, at *1 (Iowa Aug. 15, 2008) (per curiam) (citation omitted). Overall, we see no basis to reverse the district court's ruling placing physical care with Marcus. And we agree specifically with the court's comments at trial that this case involves "two parents that like to play games with each other" and were "acting very childish with each other." After giving appropriate weight to the express and implicit credibility findings related to the parties' competing evidence at trial, we find placing physical care with Marcus is in the children's best interests. We note there is significant record support for the district court's conclusion that Devin actively undermined Marcus's relationship with the children, such as by not including him as a parent on medical forms, sending one of the children to Marcus's house with only "I Love Mom" shirts or "Just A Boy Who Loves His Mama" shorts for clothing, and deliberately withholding information. And we observe that, in our de novo review of Devin's testimony, even the cold transcript reads as defensive and evasive. Although perhaps a closer call than some cases, we decline to reverse or modify

the physical-care ruling in part out of deference to the district court's first-hand observations of these parents at trial.

Because we affirm the district court, Devin is not entitled to appellate attorney fees. *See* Iowa Code § 600B.26 (limiting the award of "reasonable attorney fees" to "the prevailing party").

**AFFIRMED.**